UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

**METROPOLITAN TABERNACLE CHURCH**; and
**PASTOR WILLIAM STEVEN BALL**,

    *Plaintiffs*,

v.

**CITY OF CHATTANOOGA**; and
**MAYOR ANDREW BERKE**, in his official capacity,

    *Defendants*.

Case No.:_____

**VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, DECLARATORY JUDGMENT, INJUNCTIVE RELIEF, AND DAMAGES**

1. Responding to crises is difficult. But in times of difficulty, communities rise to the occasion. Pastor Ball and Metropolitan Tabernacle ("Metro Tab") Church are doing exactly that, serving their community with love during this trying time by, among other things, passing out meals and assisting with disaster relief and recovery efforts from the recent tornadoes.

2. On Sunday, however, they plan to take a brief respite and serve their Savior through prayer, worship, and preaching of the word via a "drive-in" service—where there is no direct physical interaction between members who will remain in their vehicles in the church parking lot to listen together via short-range FM transmitter.

3. Several members of Metro Tab do not have the ability to watch online services, and drive-in church is their only option to attend a service while maintaining social distancing protections.

4. However, the City and Mayor have specifically targeted churches by banning drive-in services, despite permitting packed parking lots at retail establishments and drive-in restaurants.

5. While responding to crises is difficult, this case is not. Crises do not suspend the Constitution and there is no legitimate justification for banning individuals from remaining in their vehicles in a church parking lot to listen to a short-range FM broadcast of a church service.

6. Plaintiffs intend to hold drive-in service in accordance with their conscience and safe social distancing practices so that parishioners can safely worship God together from their cars without risking the spread of COVID-19. Despite these safety measures, the City threatens Plaintiffs with potential fines and penalties if they hold a drive-in service. A temporary restraining order and injunction are therefore needed to preserve Plaintiffs' constitutional rights.

## JURISDICTION AND VENUE

7. This civil rights action raises federal questions under the United States Constitution, specifically the First and Fourteenth Amendments, and under federal law, particularly 42 U.S.C. § 1983.

8. This Court has subject matter jurisdiction over the federal claims under 28 U.S.C. §§ 1331 and 1343.

9. This Court has supplemental jurisdiction over the state claims under 28 U.S.C. § 1367.

10. This Court has authority to grant the requested declaratory relief under 28 U.S.C. §§ 2201 and 2202, the requested injunctive relief and damages under 28 U.S.C. § 1343, and reasonable attorney's fees and costs under 42 U.S.C. § 1988.

11. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this district and Defendant resides in this district.

2

## PARTIES

12. Plaintiff Metro Tab Church (the Church) is a non-profit, Christian church organized exclusively for religious purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code. Metro Tab Church is located in Chattanooga, Tennessee.

13. Plaintiff Dr. William Steven Ball (Pastor Ball) serves as Pastor of Metro Tab Church, which he and his wife co-founded in 2002.

14. Defendant City of Chattanooga is a municipality organized under the laws of the State of Tennessee and is subject to suit under 42 U.S.C. § 1983 and common law.

15. Defendant Andrew Berke is Mayor of the City of Chattanooga. He is sued in his official capacity only.

16. Defendants City of Chattanooga and Mayor Berke are collectively referred to as the City.

## FACTS

### Metro Tab Church

17. Founded in 2002, the Church quickly grew as one of the largest multicultural and multiracial churches in Chattanooga.

18. Home to congregants of over 30 different nationalities, the church brings people together to worship and to serve the community.

19. The Church is an independent church, not closely affiliated with any association, convention, conference, or council of churches.

20. Plaintiffs, the Church and Pastor Ball, believe that the Bible is the inspired Word of God and the sole authority for faith and practice.

21. They believe the Bible teaches, among other things, the requirement to gather together for corporate prayer and worship and that such assembly is necessary and good for the Church and its members' spiritual growth.

3

## The Church's Response to COVID-19

22. The Church last held in-person services on March 15, 2020.

23. On that day, the CDC issued recommendations that people and organizations refrain from meeting in groups larger than 50.

24. To comply with these recommendations, the Church has recorded and broadcast services online, but has not meet corporately since March 15, 2020.

25. As of March 22, 2020, no state or local ordinance prohibited the Church from meeting in person, but in order to prudently protect the health and welfare of its congregants it voluntarily refrained from holding in-person services.

26. However, several congregants are unable, for various reasons, to access online streaming services and are unable to participate in online services.

27. In order to comply with the Biblical teaching to meet together, but also comply with state and national guidelines and protect the health and welfare of its congregants, the Church plans to continue to broadcast services online but to also host drive-in services after the online service, starting April 19.

28. The Church planned to host a drive-in service on Easter Sunday, April 12, but cancelled it due to the actions of the City described in subsequent paragraphs.

29. The Church intends to conduct the drive-in service according to the following tentative plan:

30. The Church will setup a short-range FM transmitter in its parking lot.

31. Pastor Ball will preach, pray, and host the service outdoors and will broadcast the message through the FM transmitter as well as through speakers.

32. Congregants may park in the church parking lot using every other parking space so long as space allows.

33. Congregants will be instructed to stay in their vehicles at all times.

34. Congregants will be instructed to leave their windows rolled up, and not to open them more than halfway if needed to hear the loudspeakers.

35. The Church will limit its production team to less than ten people.

36. The Church's production team is also careful to follow CDC guidelines while preparing for and producing the Church's online services, and will do the same for its drive-in services. Among other things, they stay at least six feet from each other as practicable.

37. The Church has, or will prior to April 19, expended funds to print signage for the drive-in services.

38. In sum, the Church's drive-in services are a creative way for the Church and its parishioners to worship together and exercise their faith while avoiding in-person contact and ensuring the health and safety of attendees and the local community.

39. The Church also continues its ministry to the community and those in need.

40. For example, on Good Friday, church members, while adhering to recommended health and safety guidelines, passed out over 250 meals to individuals in need due to scarcity during the stay-at-home order.

41. All this week, teams from the church have been assisting victims of the recent tornadoes by clearing debris, salvaging belongings, providing food, and supplying resources for hotels for those who have displaced from their place of residence.

**The Governor's Orders allow churches to hold "drive-in" services**

42. On March 22, 2020, Tennessee Governor Lee issued Executive Order 17, prohibiting in-person social gatherings of ten or more people effective March 23, 2020.

43. Executive Order 17 does not prohibit drive-in church.

44. A true and accurate copy of Executive Order 17 (Mar. 22, 2020) is attached as **Exhibit 1**.

45. On March 30, 2020, Governor Lee issued Executive Order 22 "urging" all persons in Tennessee to "stay at home, except for when engage in Essential Activity or Essential Services."

46. A true and accurate copy of Executive Order 22 (Mar. 30, 2020) is attached as **Exhibit 2**.

47. On April 2, 2020, Governor Lee made the stay-at-home order mandatory through Executive Order 23, "require[ing]" all persons in Tennessee to "stay at home, except for when engage in Essential Activity or Essential Services."

48. A true and accurate copy of Executive Order 23 (April 2, 2020) is attached as **Exhibit 3**.

49. Both Executive Order 22 and 23 define "Essential Activity" to include: "Visiting a place of worship . . . provided that the Health Guidelines are followed to the greatest extent practicable."

50. Both Executive Order 22 and 23 define "Essential Service" to include "Religious and Ceremonial Functions. This includes, but is not limited to: religious facilities, entities, groups, personnel, services, rites, and gatherings, including weddings and funerals, provided that the Health Guidelines set forth in Executive Order No. 22 are followed to the greatest extent practicable."

51. For houses of worship, the end effect of the Governor's Executive Orders is that they can continue holding religious gatherings like drive-in services.

### The City initially allowed churches to hold "drive-in" services

52. Following the Governor's lead, the Mayor issued Executive Order 2020-04 on March 23, 2020 prohibiting "all public and private gatherings of more than ten people occurring outside a single household or living unit" with exceptions for "Essential Activities."

53. A true and accurate copy of Executive Order 2020-04 (March 23, 2020) is attached as **Exhibit 4**.

54. Executive Order 2020-04 defines "Essential Activities" to include obtaining supplies or services, engaging in outdoor activities, provided the individuals comply with the Social Distancing Requirements, and performing work or providing services not specifically prohibited in the Order.

55. Executive Order 2020-04 does not specifically prohibit drive-in church or any activity like drive-in church.

56. On April 2, 2020 the Mayor issued Executive Order 2020-06 ordering individuals in the city to "shelter at their place of residence" but permitting persons to leave their places of residence for "Essential Activities . . . or to operate Essential Services Businesses."

57. A true and accurate copy of Executive Order 2020-06 (April 2, 2020) is attached as **Exhibit 5**.

58. Executive Order 2020-06 defines "Essential Activities" to include any activity listed as Essential Activities in the Governor's Executive Order 22—which includes "Visiting a place of worship."

59. Executive Order 2020-06 defines Essential Service Businesses as including "Religious and Ceremonial Functions. This includes, but is not limited to: religious facilities, entities, groups, personnel, services, rites, and gatherings, including weddings and funerals, provided that the Health Guidelines set forth in

Governor Lee's Executive Order No. 22 are followed to the greatest extent practicable."

60. Executive Order 2020-06 authorizes the Chattanooga Police force to enforce the order.

61. On or about April 6, 2020, Pastor Ball inquired with the Chattanooga Police whether drive-in church services were permitted.

62. On or about April 7, 2020, Pastor Ball was informed by a lieutenant of the Chattanooga Police Department that drive-in church would not violate the order.

63. On information and belief, another pastor in Chattanooga discussed holding drive-in church with the Mayor and the Mayor indicated on April 7, 2020, that it was permissible.

64. Based on these representations, the Church began planning to hold drive-in services on Easter Sunday, April 12, including acquiring the use of FM transmitting equipment and sending an email to congregants.

65. Church staff, including Pastor Ball, traveled to the church to prepare for the Easter drive-in service and expended funds to do so.

66. The Church paid at least one part-time staff member, as well as salaried staff, to set up sound equipment in preparation for the Easter drive-in service.

**The City changes course and specifically targets churches**

67. On April 9, 2020, the Mayor issued Executive Order 2020-07 extending the provisions of Executive Order 2020-06 another seven days and stating that "This Order shall be extended . . . and shall remain in effect until withdrawn or extended pursuant to Tennessee law."

68. A true and accurate copy of Executive Order 2020-07 (April 9, 2020) is attached as **Exhibit 6**.

69. On the same day, April 9, 2020, the Mayor posted a message specifically aimed at churches on the City website and on his Official Facebook page stating that "drive-in services . . . even in their cars with the windows rolled up, for any length of time will be considered a violation of our shelter-in-place directive."

70. A true and accurate copy of the Mayor's statement posted on his official Facebook page is attached as **Exhibit 7.**

71. On April 11, 2020, Counsel for Plaintiffs sent an email to the City Attorney notifying the City that this interpretation of the stay-at-home order violates the constitution and requesting that the City permit drive-in services.

72. To date, the City has not responded directly to the request.

73. Due to the Mayor's statement, the Church decided not to hold drive-in services on Easter Sunday.

74. On April 14, 2020, the United States Department of Justice issued a statement in support of Temple Baptist Church in Greenville, Mississippi where the pastor and members were fined $500 each for attending a drive-in service.

75. A true and accurate copy of the Attorney General's statement is attached as **Exhibit 8**.

76. The Attorney General affirmed that even in times of emergency the "government may not impose special restrictions on religious activity that do not also apply to similar nonreligious activity."

77. Despite being on notice from both the DOJ and Plaintiffs' counsel that its drive-in church ban is unconstitutional, the City again issued another statement on April 14, 2020 stating that "The Mayor is required to reissue these orders every seven days and continues to do so until it is deemed safe to lift this order. This means . . . No drive-in church service."

78. A true and accurate copy of the April 14, 2020 statement is attached as **Exhibit 9**.

79. The City has offered no justification for prohibiting church members from sitting in their vehicles in the parking lot to listen to drive-in church.

80. The City permits persons to park next to each other in retail parking lots such as Lowes and Home Depot with their windows down.

81. The City permits persons to interact directly with their windows down in drive-through restaurants such as Sonic.

82. For example, on or about April 16, 2020, the Sonic near the Church was open with individuals sitting in their vehicles in simultaneous parking spots being served through the vehicle windows.

83. Below are true and accurate photos taken on or about April 16, 2020, of various retail and restaurant establishments in Chattanooga where persons are free to park *en masse* and leave their windows open.






11




12



84. Thus, according to the City, you can buy a hamburger and sit in your car at a drive-in restaurant, or sit in the parking lot of a retail establishment with hundreds of other vehicles with your windows rolled *down*, but you can't sit in your car at a drive-in church service with your windows rolled *up*.

85. Plaintiffs want to, and plan to, hold drive-in services, including this upcoming Sunday, April 19, 2020, until it is once again safe to meet in-person.

86. The City published a statement on enforcement of the stay-at-home order which states that, "[i]f the business and responsible party refuse to adhere to the Order, the responsible party could be issued a citation or other enforcement mechanisms."

87. The City was acting under color of state law when it enacted and threatened to enforce the drive-in church ban and it continues to act under color of state law.

88. In the absence of declaratory and injunctive relief, Church members and attendees will be deterred from attending drive-in services and Plaintiffs will continue to suffer violations of their constitutional rights and irreparable harm.

## COUNT I
### Violation of the First Amendment to the U.S. Constitution
### (Free Exercise)

89. Plaintiffs incorporate by reference paragraphs 1 through 88.

90. Plaintiffs' sincerely held religious beliefs teach that Bible is the inspired Word of God and the sole authority for faith and practice.

91. Plaintiffs sincerely believe that the Bible teaches the necessity of gathering together for corporate prayer and worship and that such assembly is necessary and good for the Church and its members' spiritual growth.

92. The City's drive-in church ban substantially burdens Plaintiffs' religion by prohibiting them from holding even "drive-in" church services.

93. The City's drive-in church ban interferes with Plaintiffs' ability to carry out their religious doctrine, faith, and mission.

94. The City's drive-in church ban targets, discriminates against, and shows hostility towards churches, including Plaintiffs.

95. The City's drive-in church ban is neither neutral nor generally applicable.

96. The City does not have a compelling reason for shutting down "drive-in" church services, nor has it selected the least restrictive means to further any purported interest.

97. The City's drive-in church ban violates the Free Exercise Clause of the First Amendment to the United States Constitution, both facially and as applied.

98. In the absence of declaratory and injunctive relief, Plaintiffs will be irreparably harmed.

## COUNT II
### Violation of the First Amendment to the U.S. Constitution
### (Free Speech)

99. Plaintiffs incorporate by reference paragraphs 1 through 98.

100. The City's drive-in church ban violates Plaintiffs' freedom of speech by prohibiting them from engaging in religious speech through their "drive-in" church services, which occur exclusively on private property.

101. In addition, the City's drive-in church ban gives government officials unbridled discretion with respect to enforcement of the order and the imposition of any penalty, making the order susceptible to both content- and viewpoint-based discrimination.

102. Prohibiting or punishing Plaintiffs' religious speech does not serve any legitimate, rational, substantial, or compelling governmental interest.

103. The City also has alternative, less restrictive means to achieve any interest that it might have.

104. The City's drive-in church ban violates the Free Speech Clause of the First Amendment to the United States Constitution, both facially and as applied.

105. In the absence of declaratory and injunctive relief, Plaintiffs will be irreparably harmed.

## COUNT III
### Violation of the First Amendment to the U.S. Constitution
### (Right to Assemble)

106. Plaintiffs incorporate by reference paragraphs 1 through 105.

107. The First Amendment prohibits the City from violating Plaintiffs' right to peaceably assemble.

108. The City's drive-in church ban violates Plaintiffs' right to peaceably assemble because the ban on "drive-in" services does not serve any legitimate, rational, substantial, or compelling governmental interest.

109. In addition, the City has alternative, less restrictive means to achieve any interest that it might have.

110. The City's drive-in church ban violates the right to assemble under the First Amendment to the United States Constitution, both facially and as applied.

111. In the absence of declaratory and injunctive relief, Plaintiffs will be irreparably harmed.

## COUNT IV
### Violation of Tennessee Statute for the Preservation of Religious Freedom
### (Tenn. Code Ann. § 4-1-407 (West))

112. Plaintiffs incorporate by reference paragraphs 1 through 111.

113. Tennessee's Statute for the Preservation of Religious Freedom prohibits the government, including a local political subdivision of the state, from substantially burdening a person's exercise of religion unless it can demonstrate that "application of the burden to the person" is "essential to further a compelling governmental interest" and "the least restrictive means of furthering that compelling governmental interest." Tenn. Code Ann. § 4-1-407 (West).

114. The City's drive-in church ban substantially burdens Plaintiffs' religion by prohibiting them from holding "drive-in" church services.

115. The City's drive-in church ban does not further a compelling interest, nor is it narrowly tailored to advance any compelling governmental interest.

116. The City's drive-in church ban therefore violates Tenn. Code Ann. § 4-1-407 (West) as applied to Plaintiffs.

117. In the absence of declaratory and injunctive relief, Plaintiffs will be irreparably harmed.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court:

a. Enter a temporary restraining order, preliminary injunction, and permanent injunction prohibiting the City of Chattanooga from enforcing its drive-in church ban, allowing Plaintiffs to continue holding "drive-in" services on Church property;

b. Enter a judgment declaring that the City's drive-in church ban violates the U.S. Constitution's Free Exercise, Free Speech, and Right to Assemble, Clauses;

c. Enter a judgment declaring that the City's drive-in church ban violates Tenn. Code Ann. § 4-1-407 (West);

d. Award Plaintiffs' actual and nominal damages, court costs, and reasonable attorney's fees; and

e. Award such other and further relief as to which Plaintiffs may be entitled.

Respectfully submitted this 16th day of April 2020.

|  |  |
|---|---|
|  | s/Nathan W. Kellum |
| Ryan J. Tucker* | Nathan W. Kellum |
| AZ Bar No. 034382 | TN Bar No. 13482 |
| ALLIANCE DEFENDING FREEDOM | CENTER FOR RELIGIOUS EXPRESSION |
| 15100 N. 90th Street | 699 Oakleaf Office Lane, Suite 107 |
| Scottsdale, AZ 85260 | Memphis, TN 38117 |
| Telephone: (480) 444-0020 | Telephone: (901) 684-5485 |
| rtucker@adflegal.org | nkellum@crelaw.org |
|  |  |
| David A. Cortman* | J. Caleb Dalton* |
| GA Bar No. 188810 | Virginia Bar Number: 83790 |
| ALLIANCE DEFENDING FREEDOM | ALLIANCE DEFENDING FREEDOM |
| 1000 Hurricane Shoals Rd. NE | 440 First Street NW, Suite 600 |
| Suite D-1100 | Washington, D.C. 20001 |
| Lawrenceville, GA 30043 | Telephone: (202) 393–8690 |
| Telephone: (770) 339-0774 | cdalton@ADFlegal.org |
| dcortman@ADFlegal.org |  |

ATTORNEYS FOR PLAINTIFFS

*Motions for *Pro Hac Vice* admission forthcoming.

## VERIFICATION

I declare under penalty of perjury that the foregoing Verified Complaint has been examined by me and that the factual allegations therein are true to the best of my information, knowledge, and belief.

Dated: April 16, 2020

_____
Dr. William Steven Ball
Metro Tab Church

19